UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FERNANDO FABIAN CHAGLLA,<br><br>Petitioner,<br><br>v.<br><br>RAUL MALDONADO, *et al.*,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER**<br><br>26-cv-4308 (BMC) |

**COGAN**, District Judge.

Petitioner, a native and citizen of Ecuador, seeks habeas relief under 28 U.S.C. § 2241. Petitioner seeks immediate release from U.S. Immigration and Customs Enforcement ("ICE") detention or, in the alternative, a bond hearing, at which respondents must justify his ongoing detention by clear and convincing evidence. For the reasons below, the petition is granted.

**BACKGROUND**

During an operation targeting another alien with a final order of removal, ICE approached petitioner and asked if he had seen that person. Respondents assert, and petitioner denies, that during this conversation, petitioner admitted that he was in the country without lawful status. ICE detained him and this habeas petition quickly followed.

In support of their opposition, respondents filed a declaration by the ICE officer who arrested petitioner, Supervisory Detention & Deportation Officer ("SDDO") Brenden Cuni. SDDO Cuni describes a 20-minute long encounter, starting at 6:40pm when he first saw petitioner and spoke with him, during which petitioner admitted to being in the country unlawfully. SDDO Cuni states that after this admission by petitioner, he contacted the "Law Enforcement Support Center" to conduct a records check and "confirmed" that petitioner had no

lawful status. SDDO Cuni states he obtained an administrative warrant, which he then served on petitioner, and arrested him around 7:00pm. Petitioner was then transported to Manhattan for "processing," and around 9:30pm he was served with an NTA.

Not long after SDDO Cuni's declaration was filed, a video of the arrest from a nearby doorbell camera surfaced, and the footage largely contradicts SDDO Cuni's declaration. Although there are many discrepancies, the relevant differences are that (1) SDDO Cuni did not issue or obtain an arrest warrant (judicial or administrative) before arresting petitioner, and (2) the entire encounter lasted less than 3 minutes, as opposed to 20. Petitioner's counsel brought the video to respondents' counsel's attention, and respondents have doubled down. SDDO Cuni filed a "supplemental" declaration that purports to fill in the gaps but essentially retells the original story.

As for verifying petitioner's immigration status before the arrest, SDDO Cuni backtracked on calling the "Law Enforcement Support Center" as he originally described. Instead, he recounts having entered petitioner's name on a smartphone app called "Mobile Fortify," which SDDO Cuni states "connects instantly to multiple federal and state databases . . . including DHS's biometric systems and passport and visa records." That query returned no "records indicating Petitioner had any prior encounters with CBP or ICE," which, to SDDO Cuni, "indicated that Petitioner was present in the United States without legal entry."

SDDO Cuni also attempted to reconcile his misstatement about issuing the warrant before arresting petitioner:

> In [the original] Declaration, I stated that I issued the I-200 . . . prior to arresting Petitioner. I should have clarified that, because the I-200 forms were inside my parked vehicle, which was across the street from where we encountered Petitioner, I first put handcuffs on Petitioner and escorted him across the street to the vehicle. At that point, once at my vehicle, I contacted the Law Enforcement Support Center, which confirmed the information I received via my Mobile

> Fortify search: *i.e.*, Petitioner lacked immigration status. I then issued the I-200. To do that, I took a blank I-200 from the inside of my vehicle, which only had my electronically printed name and title on it. I completed the form, by hand, on the street. At 6:52 p.m., I took a photograph of the filled-out I-200 before it was served on Petitioner.

Petitioner's essential habeas theory is that ICE violated the statutory and regulatory requirements for immigration-related arrests by filling out the administrative warrant and NTA after detaining him, instead of beforehand, which thereby violated his due process rights. Respondents' opposition brief, which it based on SDDO's first declaration, argues that his petition should be denied because "his arrest was conducted pursuant to a valid administrative warrant." Despite filing the supplemental declaration of SDDO Cuni, respondents did not add or change their arguments, and instead pointed back to "the reasons set forth in [their original] filing."

## DISCUSSION

### I. Legal Standard

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Öztürk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025). The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

## II. Analysis

"Parties claiming denial of due process in immigration cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process.'" Garcia-Villeda v. Mukasey, 531 F.3d 141, 149 (2d Cir. 2008) (quoting Lattab v. Ashcroft, 384 F.3d 8, 19 (1st Cir. 2004)). The "challenged process" here is petitioner's arrest by immigration officers pursuant to an administrative warrant, which is governed by 8 U.S.C. § 1226 and the implementing regulations, 8 C.F.R. §§ 236.1(b), 1236.1(b).[1] Thus, the first question is whether his arrest complied with the law. If it did not, the second question is what prejudice petitioner suffered and identifying the appropriate remedy for that prejudice.

### A. Petitioner's Arrest was Unlawful

The propriety of an arrest based on an I-200 administrative warrant is a matter of timing: it cannot precede an NTA. See 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, [an alien] may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."); Garcia Lanza v. Noem, 822 F. Supp. 3d 326, 333 (E.D.N.Y. 2026) ("[T]he authority to issue [I-200] administrative arrest warrants emanates from a pending removal proceeding – which is initiated by the issuance of an NTA."). This is because the "NTA begins the removal process, and at that time or after its issuance, the Government can then effectuate [an individual's] arrest, and, if necessary, detention, until removal proceedings are completed." Gopie v. Lyons, No. 25-cv-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (citing Niz-Chavez v. Garland, 593 U.S. 155, 157-58 (2021)).

[1] 8 U.S.C. § 1357(a)(2) governs warrantless arrests by ICE officers. Respondents do not argue that petitioner's arrest complied with that statute (nor could they), so the Court does not consider what effect, if any, it has here.

When ICE arrests first and pencil-whips the I-200 later, courts have uniformly found the arrests unlawful. See Garcia Lanza, 822 F. Supp. 3d at 333 (collecting cases); Yeleshev v. Larocco, No. 26-cv-2294, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) ("an I-200 cannot be used to effectuate an arrest *before* an NTA has been issued"); Parada Cruz v. Mullin, No. 26-cv-1110, 2026 WL 1027441, at *2 (E.D.N.Y. Apr. 16, 2026) ("There is no 'leeway.' If ICE wants to use [an I-200] warrant, it must have a valid NTA in place . . . . Here, the ICE officer who arrested [petitioner] testified that the exact opposite took place.").

The Court does the same here. It is a very rare exception that an arresting officer may issue his own arrest warrant. See Walker v. City of Birmingham, 388 U.S. 307, 320-21 (1967) ("in the fair administration of justice no man can be judge in his own case, however . . . righteous his motives"). And for that reason, the "carefully proscribed circumstances," Garcia Lanza, 822 F. Supp. 3d at 332, in which Congress envisioned the use of I-200 warrants must be strictly followed. See Zongbo Zhu v. Genalo, 798 F. Supp. 3d 400 (S.D.N.Y. 2025) ("The Government has significant discretion to enforce the immigration laws [but] it must do so consistent with the requirements of its own regulations and the Due Process Clause.").

Those circumstances are missing here because SDDO Cuni arrested petitioner before issuing the NTA (or even the I-200 warrant). See Viner v. Maldonado, No. 26-cv-4696, 2026 WL 2355437, at *2 (E.D.N.Y. Aug. 14, 2026) ("There is no dispute here that [the officer] failed to issue an NTA before arresting [p]etitioner pursuant to a Form I-200 Warrant."). Accordingly, petitioner's arrest was unlawful.

**B. Prejudice and Remedy**

Petitioner contends that the prejudice here is his ongoing detention, and thus the appropriate remedy is his immediate release. Virtually every court that has granted a factually

similar habeas petition has agreed. See Parada Cruz, 2026 WL 1027441, at *4 (appending 31 such cases); see, e.g., Garcia Lanza, 822 F. Supp. 3d at 340; Yeleshev, 2026 WL 1353806, at *8; Viner, 2026 WL 2355437, at *2.

Although "the proper remedy for a deprivation of due process is the process itself," Romero-Arriaza v. Maldonado, No. 26-cv-3488, 2026 WL 2332831, at *3 (E.D.N.Y. Aug. 5, 2026), courts cannot "go back in time" to afford a petitioner of the process of which he was deprived during the arrest. See Qunjie Yao v. Almodovar, 813 F. Supp. 3d 461, 476-77 (S.D.N.Y. 2025) (Court could not "retrospectively cure the due process violation [that] derived from [an] unlawful arrest and detention without the statutorily required [procedure]."). Thus, the solution, at least according to these courts, is to go back *further* in time, before the petitioner was arrested, and order their immediate release.

This Court respectfully disagrees with that approach. There is a fundamental problem with attempting to rewind the clock like that: the petitioner can simply be detained again, ostensibly under the proper procedures. To plug that hole, some courts have "enjoined [respondents] from detaining [the petitioner] absent further direction from [the court]." E.g., Yeleshev, 2026 WL 1353806, at *8. And although the Second Circuit apparently has no qualms with an injunction that "prohibits ICE from re-detaining a petitioner without court permission," Villiers v. Decker, 31 F.4th 825, 831 (2d Cir. 2022), the Court finds such an injunction, at least in these circumstances, to be inappropriate. The Court therefore denies petitioner's request for immediate release.

Petitioner is not without a remedy, however. The progeny of Zadvydas v. Davis, 533 U.S. 678, 682 (2001), including Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024), protect against potential due process violations by requiring respondents to justify an alien's detention

by clear and convincing evidence, when the duration of the detention exceeds six months. Here, we are beyond the "potential" for due process violations, but petitioner is within "the six-month, presumptively reasonable duration of detention[.]" Mathieu v. Dep't of Homeland Sec., No. 26-cv-4630, 2026 WL 1747084, at *4 (S.D.N.Y. June 17, 2026) (citing Zadvydas, 533 U.S. at 701).

The appropriate remedy, therefore, is not rewinding the clock, but fast-forwarding it, by requiring respondents to justify petitioner's detention by clear and convincing evidence. That remedy, which exists as a safeguard for "potential" due process violations, appropriately reconciles the Court's inability to "retrospectively cure the due process violation," Yao, 813 F. Supp. 3d at 476-77, while still vindicating petitioner's already-violated due process rights.

"Accordingly, petitioner is entitled to a 'burden-shifted bond hearing . . . at which the Government bears the burden of showing, by clear and convincing evidence, that he is either a danger to the community or a flight risk.'" Gyaltsen v. Maldonado, No. 26-cv-3314, 2026 WL 2137872, at *4 (E.D.N.Y. July 24, 2026) (citations omitted); see Velasco Lopez v. Decker, 978 F.3d 842, 855-57 (2d Cir. 2020).

## CONCLUSION

The petition is granted to the extent set forth above.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
August 26, 2026